IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGEL GUERRIDO-LOPEZ,** | : | |
| **206 South 12th Street** | : | **CIVIL ACTION** |
| **Easton, Pennsylvania 18042,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **OFFICER DAVID M. HOWELLS, III,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **544 North 6th Street** | : | |
| **Allentown, Pennsylvania 18102,** | : | |
| | : | |
| **OFFICER JOSEPH M. IANNETTA,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **544 North 6th Street** | : | |
| **Allentown, Pennsylvania 18102,** | : | |
| | : | |
| **FORMER CHIEF ROGER MACLEAN** | : | **Jury Trial Demanded** |
| *Individually and in his official capacity as Chief* | : | |
| *of the Allentown Police Department* | : | |
| **544 North 6th Street** | : | |
| **Allentown, Pennsylvania 18102,** | : | |
| | : | |
| **MAYOR ED PAWLOWSKI,** | : | |
| *Individually and in his official capacity as Mayor* | : | |
| *of the City of Allentown* | : | |
| **435 Hamilton Street** | : | |
| **Allentown, Pennsylvania 18101,** | : | |
| | : | |
| **JOHN/JANE DOE #1 - X** | : | |
| *Individually and in their official capacity as* | : | |
| *members of the Allentown Police Department* | : | |
| **544 North 6th Street** | : | |

**Allentown, Pennsylvania 18102,**                    :
                                                       :
    **and**                        :
                                                       :
**CITY OF ALLENTOWN,**                                 :
**435 Hamilton Street**                                :
**Allentown, Pennsylvania 18101,**                     :
                                                       :
       **Defendants.**    :

## COMPLAINT

**AND NOW COMES**, Plaintiff **ANGEL GUERRIDO-LOPEZ**, by and through his legal counsel, Robert E. Goldman, Esquire, and does hereby allege and aver the following:

## I. JURISDICTION AND VENUE

1. This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act", as amended, 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, §1343 (3), §1343 (4) and §1367, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3. Venue in the Eastern District is properly laid pursuant to 28 U.S.C. §1391, insofar as the alleged unlawful conduct complained of in this Complaint,

which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of Allentown, Pennsylvania, in particular.

## II. PARTIES

4. Plaintiff Angel Guerrido-Lopez is an adult individual, currently residing at 206 South 12th Street, Easton, Northampton County, Pennsylvania, 18042.

5. Defendant Officer David M. Howells, III (hereinafter referred to as "Howells") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Allentown. Defendant Howells was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

6. Defendant Officer Joseph M. Iannetta (hereinafter referred to as "Iannetta") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Allentown. Defendant Iannetta was entrusted to

3

protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

7. Defendant Former Chief Roger MacLean (hereinafter referred to as "Chief MacLean ") is an adult individual who, at all times relevant hereto, up until September 6, 2013, was a sworn member of the Allentown Police Department with the rank of Chief who was/is responsible for the formulation and/or implementation of practices, policies, and procedures, discipline and assignment of officers, hiring and firing, as well as the day to day operation and overseeing and command and control of all segments of the Police Department, and who at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently. It is believed, and therefore averred that Defendant MacLean, along with Defendant Pawlowski, is/were the ultimate authority for the staffing, promotions, discipline and operational functions of the Allentown Police Department, with the final and unreviewable decision making authority of a policymaker.

4

8. Defendant Mayor Ed Pawlowski (hereinafter referred to as "Mayor Pawlowski") is an adult individual who is an elected official of the City of Allentown and is in direct supervision of the Police Department and its sworn members, and also of the selection of supervisory personnel for the Allentown Police Department, who are, in turn, by and through him, responsible for the formulation and/or implementation of practices, policies, customs and procedures, as well as the day-to-day operation and oversight, including command and control, of all segments of the Allentown Police Department. Mayor Pawlowski either does, or fails to, promulgate and enforce laws, rules and regulations concerning the operations of the Allentown Police Department and who at all times relevant hereto, was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance, and supervised or controlled one or more of the other Defendants herein, in their conduct or actions, or inactions, or acted in concert with them, in the performance of their conduct or actions. It is believed, and therefore averred that Defendant Mayor Pawlowski, along with Defendant Chief MacLean, exercises/exercised authority over the selection, staffing, retention, training, promotions, discipline and operational functions of the Allentown Police Department, with the final and unreviewable decision making authority of a policymaker.

5

9. Defendant John/Jane Doe #1 - X (hereinafter referred to as "Doe") is/are adult individual(s) who, at all times relevant hereto, was/were serving in their capacity as sworn officer(s), and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Allentown. Defendant Doe was/were entrusted to protect the Constitutional rights of those they encountered and at all times relevant hereto, was/were acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance of their actions, or acted independently.

10. Defendant City of Allentown (hereinafter referred to as the "City") is a municipal corporation and governmental entity within the Commonwealth of Pennsylvania, empowered to establish, regulate, and control its Police Department for the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and the Constitutional rights of individuals within the geographical and legal jurisdiction of the Defendant City.

## III. PRE-DISCOVERY FACTUAL ALLEGATIONS

11. On or about September 10, 2013 at approximately 11:30 P.M. in the vicinity of the 100 block of Seventh Street in Allentown, PA, Plaintiff was in the

6

process of moving his personal belongings in a cart three blocks from one apartment to a new residence.

12. Plaintiff's girlfriend had asked Plaintiff to pick up a few items from the 7-Eleven store on his way to the new apartment.

13. Near the 7-Eleven store, Plaintiff happened to bump into a person who he knew from the neighborhood who agreed to watch Plaintiff's cart of personal property while Plaintiff briefly went into the store.

14. While Plaintiff was in the store, and unbeknownst to him, Defendant Iannetta and his partner, Officer Lobach, had placed the neighbor who was entrusted with the cart into custody based on an outstanding warrant, and had placed him in the back of their patrol car.

15. Defendant Howells then arrived at the scene and Defendants Howells and Iannetta began to go through Plaintiff's shopping cart, throwing much of its contents on the sidewalk and into the street.

16. The arrested neighbor had told all three of the officers, multiple times, that the contents of the cart were not his and that he was only watching it while the owner went briefly into the 7-Eleven store to shop.

17. When the Plaintiff exited the 7-Eleven store with his bag of groceries, he saw a police car and a police van parked in the area where he had left the neighbor with his cart, and he saw his neighbor in the back of the police car.

7

18. As the Plaintiff approached the cart and Defendants Iannetta and Howells who were standing by it, he noticed his belongings scattered on the street and on the sidewalk and he heard his neighbor yelling to the police that the Plaintiff was the owner of the cart of items he had been watching.

19. The Defendants saw the Plaintiff exit the 7-Eleven store with his bag of groceries and walk directly towards them and his cart; and, they clearly heard the neighbor identify him as the lawful owner of the items they had thrown about.

20. The Plaintiff immediately asked the officers what had happened and who had thrown his items out of the cart.

21. Defendant Howells responded by asking the Plaintiff whose "stuff" this was and, the Plaintiff identified himself and politely explained that it was his belongings and that he was in the process of moving his personal items to a nearby apartment and the person they had in the police car was a neighbor who he had bumped into outside the 7-Eleven store who was watching his items for a minute while he purchased a few items from the store.

22. Although the Defendants saw the Plaintiff walk from the 7-Eleven store with a shopping bag in his arms, Defendant Howells asked Plaintiff his name, to which he responded, "Angel", and then Howells asked him where he was coming from.

8

23. The Plaintiff responded that he was just coming from the 7-Eleven store, and showed Howells the milk and iced tea contents of his grocery bag, and repeated that he was just going to his girl's apartment, and asked if he could please just pick up his items, put them back inside the cart, and keep walking home.

24. Defendant Howells then asked the Plaintiff if he had anything illegal on him.

25. Plaintiff cooperatively answered that he had two syringes.

26. Defendant Howells directed the Plaintiff to show him where they were.

27. The Plaintiff complied by lifting up his shirt which was draped over a black bag attached to his belt, and by zipping open the bag so that Defendant Howells could see the top of two syringes that were stored within the bag.

28. Suddenly, without warning, reason, provocation, further instruction or explanation, Defendant Howells viciously grabbed the Plaintiff, lifted him into the air and forcefully drove him into the concrete, smashing him head and face first onto the concrete sidewalk, rendering him unconscious and bleeding from the nose and face. One of the Defendants, Howells and Iannetta, then stomped his ribs with his booted foot.

29. Plaintiff remained unconscious for approximately one-half day and sustained injuries, including, inter alia, a fractured neck, fractured eye socket, broken

9

nose, fractured rib, and permanent nerve damage causing permanent blurred vision.

30. Following the infliction of injuries to Plaintiff, Defendants Howells and Iannetta falsified police reports concerning the occurrence, falsely reported and then arrested Plaintiff for resisting arrest, and falsely testified at trial against Plaintiff.

31. This conduct is believed, and therefore averred, to be typical of the treatment of minorities by the Allentown Police Department in the City of Allentown.

32. Defendant Howells has a history of violence and Constitutional violations that were known to his supervisors and Defendant City. This history has gone undisciplined and, in essence, the Defendant's past actions were condoned and encouraged by his supervisors and the City leading to the Constitutional violations complained of in this action.

33. It is believed and therefore averred that no discipline was issued by supervisors regarding the unprovoked assault and clear Constitution violations committed upon the Plaintiff that night.

34. This lack of discipline is consistent with past Allentown Police Department practices and further evidences that violations of citizens' Constitutional rights were not only condoned but encouraged by supervisors, policy makers and the City of Allentown itself.

10

35. The Allentown Police Department and City of Allentown provided insufficient training to Defendants Howells and Iannetta pertaining to the appropriate use of force to employ in given circumstances.

36. Upon information and belief, numerous officers of the Allentown Police Department routinely used excessive force in the performance of their duties. Upon information and belief, no disciplinary action was ever taken against an officer for using excessive force, or if there was discipline, it was nominal and/or insufficient to deter future such conduct.

37. Upon information and belief, prior to the incident giving rise to Plaintiff's Complaint, no written polices existed regarding the appropriate use of force to be utilized in given circumstances commonly encountered by law enforcement. If written policies did exist, they were routinely ignored and this was accepted as the common practice of the Department and became part of its culture.

38. Despite repeated incidents/complaints of excessive use of force by the Allentown Police Department, no significant efforts were made to establish or ensure appropriate use of force standards within the Police Department and/or that they were complied with. No efforts were made to ensure citizens' Constitutional rights were not violated. Nor has the City, its Police Department and policy-makers taken any steps on their own to vindicate

11

citizens' rights known to have been violated. Instead, they have defended police officers misconduct on numerous occasions.

39. The aforesaid acts and omissions of the Defendants, or one or more of them, evidence a deliberate indifference to the rights of individuals, such as Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution.

40. At all times relevant hereto, the legal principles regarding the rights of persons, such as Plaintiff, were well established and it was not reasonable for the Defendants to believe that their actions would not deprive Plaintiff of those rights.

41. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff as more clearly set forth in the counts below.

42. The Plaintiff did not physically resist, threaten or assault the Defendants in any way, and the force used against the Plaintiff was totally and completely unnecessary, unreasonable, excessive and outrageous.

43. At no time during the events described above was the Plaintiff a threat to the safety of himself or others. To the contrary, he was simply attempting to gather his items, be on his way, and cooperate with the requests of law enforcement.

12

44. Upon information and belief, Defendant supervisors and the City administration, acting through the Mayor, ignored citizens' complaints and officers' violations of citizens' Constitutional rights. In effect, supervisors and the Mayor communicated to the Department and the public that any attempt to reform the Department would be ineffectual and that the custom and practice of the Allentown Police Department would remain intact.

45. The City failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and deliberate indifference to the rights and safety of others that had become the long-standing hallmark of the Allentown Police Department. The Defendants herein continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by rewarding inappropriate actions, by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, training, supervision and promotions; and by reinforcing the old culture of deliberate indifference.

46. At all times during the events described above, the Defendants were engaged in a joint venture. The individual Defendants assisted each other in performing the various actions described, and lent their physical presence, support, and the authority of their office to each other during the said events.

13

47. As a direct and proximate result of the said acts or omissions of the Defendant officers, the Plaintiff suffered, <u>inter alia</u>, the following injuries and damages all of which may be ongoing and permanent in nature;

      i. physical and mental pain and suffering, in both the past and the predictable future, including damages for physical pain, discomfort, loss of use of bodily function, disfigurement, ill health, and emotional injuries including stigma, humiliation, fright and emotional trauma;

      ii. compensatory damages for loss of liberty during wrongful seizure and confinement;

      iii. medical expenses, past and future;

      iv. loss of life's pleasures;

      v. impairment of personal and professional reputation, earning capacity, and shortening of economic horizons;

      vi. attorney's fees and costs related to the underlying criminal prosecution and efforts to clear Plaintiff of wrongful charges;

      vii. destruction of personal property;

      viii. general damages for violation of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United

States Constitution and Article 1, Section 8 of the Pennsylvania Constitution; and

ix. punitive damages (except as to the Defendants in their official capacity), which are justified factually and legally because the Defendants acted maliciously and/or wantonly in violating the Plaintiff's constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

48. Plaintiff further seeks counsel fees and costs as authorized by statute.

49. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff and it was unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

50. Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, others may suffer damages from similar Constitutional violations in the future.

51. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

52. While acting under color of state law, the Defendants deprived the Plaintiff of various federal Constitutional rights.

## COUNT I
## 42 U.S.C. §1983
## Excessive Force and Physical Brutality
### *Against Individual Defendants*

53. The preceding paragraphs are incorporated herein by reference as though fully set forth.

54. The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force.

55. The application of force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

56. The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested even if the arrest is otherwise proper.

57. The Defendants used excessive force in the arrest of the Plaintiff, in that, there was absolutely no need for the application of any force, and the amount of force used by the Defendants exceeded the amount of force which a reasonable officer would have used under similar circumstances.

58. No physical force of any kind was required or should have been employed.

59. The Plaintiff was simply attempting to gather his property and go on his way.

60. The Plaintiff did not present any threat to the Defendants or any other person or property.

16

61. Defendant Howells used excessive force in his encounter with the Plaintiff by using aggressive and unnecessary force likely to cause serious bodily injury when no force, or less than the force used, was necessary.

62. The use of force was not reasonable by any Defendant under the Constitution where, as here, there was no need for any force, especially the force that was used.

63. The nature and degree of excessiveness utilized against the Plaintiff by Defendants was outrageous, reprehensible, malicious, vicious, intentional, and malevolent, and clearly warrants an award of punitive and compensatory damages.

64. As a result of the excessive use of force employed against the Plaintiff in violation of his Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

65. Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

66. Defendants, the City of Allentown, Mayor Pawlowski and Chief MacLean, are liable for the acts of Defendant Officers Howells and Iannetta pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

67. Further, the conduct exhibited by subordinate municipal officers and employees, Howells and Iannetta, which occurred on September 10, 2013, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and MacLean , and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations.

68. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

18

## COUNT II
### 42 U.S.C. §1983
### Malicious Prosecution
### Against Defendants Howells and Iannetta

69. The preceding paragraphs are incorporated herein by reference as though fully set forth.

70. On September 11, 2013, Defendant Howells initiated a criminal proceeding against Plaintiff by filing a criminal Complaint and Probable cause Affidavit alleging violations of resisting arrest, possession of controlled substances, and possession of drug paraphernalia.

71. At trial, the Plaintiff admitted, as he had from the outset, that he committed the possessory offenses and contested only the totally contrived resisting arrest criminal charge.

72. Despite the Defendants' fabrications and presentment of perjured testimony setting forth the false claim that the Plaintiff had engaged in assaultive conduct towards Defendant Howells, the jury unanimously determined that the Defendants' testimony was not credible relative to this charge and that Plaintiff's testimony was reliable and the jury acquitted him of the fabricated charge of resisting arrest.

73. The Defendants' joint prosecution of the criminal charge of resisting arrest against Plaintiff was initiated without probable cause.

19

74. Said criminal charge was, in fact, totally fabricated and maliciously pursued by Defendants in an attempt to avoid responsibility and liability for the grievous assault and constitutional violations Defendants inflicted upon Plaintiff as stated herein; and had nothing whatsoever to do with bringing the Plaintiff to justice.

75. The Plaintiff suffered a deprivation of his liberty consistent with the concept of seizure as a consequence of the legal proceeding which followed.

76. Specifically, the false charge of resisting arrest, in the manner fabricated by the Defendants, falsely made the Plaintiff to appear to be a risk of flight to avoid prosecution because their fabrication asserted that he sought to avoid arrest by substantial force.

77. As a consequence, the District Magistrate imposed a higher bail which Plaintiff could not meet, restricting his freedom of movement through pretrial detention.

78. Accordingly, Plaintiff was seized within the meaning of the Fourth Amendment and suffered a deprivation of liberty sufficient to support a claim for malicious prosecution.

79. The charge of resisting arrest did not arise out of the same act for which the Plaintiff was convicted, his convictions being for mere possessory offenses, and his acquittal being for alleged assaultive behavior.

80. The favorable termination of the resisting arrest prosecution reflects the merits of this action and the Plaintiff's innocence of the misconduct alleged in the Defendants' prosecution of the Plaintiff.

81. If successful, this claim would not imply the invalidity of the Plaintiff's drug convictions or sentence but would in fact vindicate the jury's separate "not guilty" verdict on the charge of resisting arrest, upon which the instant cause of action is predicated. In other words, the prior state criminal prosecution, upon the fabricated charge of resisting arrest, terminated in such a way as to indicate the Plaintiff's innocence of the alleged misconduct underlying that offense.

82. The Plaintiff was prosecuted by Defendants based upon two sets of distinct offenses involving distinct allegations, and a favorable finding here does not conflict with the state court possessory convictions but, in fact, would be consistent with the jury's verdict and judgment as a whole.

83. Because the uncontested possessory offenses were not aimed at punishing the same underling conduct as the resisting arrest criminal charge which was maliciously brought, Plaintiff satisfies the favorable termination element of the cause of action for malicious prosecution.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and

severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT III
### Malicious Prosecution – State Violation
### Against Defendants Howells and Iannetta

84. The preceding paragraphs are incorporated herein by reference as though fully set forth.

85. The requirements to prove malicious prosecution under Pennsylvania law are almost identical to the federal counterpart alleged herein before, except that the Plaintiff need not prove a deprivation of liberty consistent with the concept of seizure under the law of this Commonwealth.

86. Accordingly, for the reasons set forth hereinbefore, and particularly in Plaintiff's federal malicious Prosecution Count, Defendants are liable to Plaintiff on the state cause of action for Malicious Prosecution and suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

22

## COUNT IV
## 42 U.S.C. §1983
## Supervisory Liability-Policymaker Liability
### *Against Defendants Pawlowski, MacLean and Does, Individually*

87. The preceding paragraphs are incorporated herein by reference as though fully set forth.

88. At all times pertinent to the claims made herein, Mayor Pawlowski and Chief MacLean occupied both policymaking and supervisory positions relative to the City of Allentown's Police Department and the subordinate members of its force, concerning which Defendants Howells and Iannetta were officers, members and employees.

89. Generally speaking, Mayor Pawlowski retained ultimate responsibility over the operations of the Police Department as the executive of Allentown, a City of the Third Class operating under an Optional Plan B form of government wherein Mayor Pawlowski shares both supervisory and policymaking responsibilities with Chief MacLean when it comes to Allentown's Police Department, which the Chief heads.

90. In practice, Mayor Pawlowski retains ultimate responsibility to supervise and monitor the overall operation of the Police Department, and Chief MacLean is responsible to supervise and monitor the day-to-day operations of the Department. Each has final decision-making authority with regard to the operational conduct of the subordinate members of the police force; each

23

retained the authority to measure the conduct and decisions of police subordinates; each played a role in fashioning and implementing Departmental police policies, practices, procedures and customs, and often did so in consultation with one another. Each is a person whose actions may fairly be said to represent official municipal policy or custom.

91. Defendants Pawlowski and MacLean implemented several policies and practices that created an unreasonable risk of Constitutional violations on the part of their subordinates, including specifically, Howells and Iannetta; and, their failure to change those policies or employ corrective practices is a direct cause of the unconstitutional conduct, which was inflicted upon the Plaintiff.

92. Most specifically among these practices was for Pawlowski and MacLean to ignore the pattern and history of Constitutional abuses committed by the police officers under their supervision.

93. The existing custom and practice followed by Defendants Pawlowski and MacLean was largely to ignore Constitutionally implicated complaints about the conduct of their officers; to take no action to properly facilitate the receipt of citizen complaints; to fail to compile and analyze in a reasonable fashion and in an accurate and continuing fashion the nature of the complaints received and what officers generate them with what frequency.

94. This deliberate indifference to the violations of their Constitutionally protected rights not only reinforced the justifiable belief among the citizenry that it was useless to register complaints about police misconduct and abuse, but, it created further ill-will, and even more significantly, sent a message to the members of the police force that their violations of the community's Constitutional rights would be tolerated and go unpunished, thereby encouraging further and even more serious violations and an unreasonable risk of just the sort of harms that were visited upon Plaintiff herein.

95. The institutionalization of a culture of Constitutionally abusive police misconduct within the Allentown Police Department was so obvious as to be apparent to any reasonable supervisor or policymaker, including Defendants Pawlowski and MacLean; and, their indifference to the risks that this custom, practice, or supervisory procedure presented was the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

96. This was no more true than with the Defendants' deliberate indifference to the need to provide its officers, including most especially, Defendants Howells and Iannetta, with more or better training with regard to the safeguards afforded by the Fourth Amendment, including particularly the prohibitions to using excessive force.

25

97. Defendants Pawlowski and MacLean were aware that their officers confront situations that may require the use of force, including deadly force, that such situations often involve difficult decisions on the part of officers about how much force to use, and that excessive force liability will frequently result if officers use more force than is reasonably necessary under the circumstances, or use force where none actually is required, as occurred here.

98. Defendant's Pawlowski and MacLean were aware of the numerous incidents of the excessive use of force that had been committed by members of the Department in the past, including those involving Defendants Howells and Iannetta, and failed to subject such offenders to appropriate evaluation, discipline and remedial training, thereby demonstrating a tolerance of past and/or ongoing police misbehavior, through knowledge and acquiescence in their subordinates' Constitutional violations.

99. Moreover, the conduct exhibited by Defendants Howells and Iannetta on September 10, 2013, was not that of unexpected, independent, non-policymaking actors, but constituted deliberate and predictable acts of subordinates who operated with a rightly perceived impunity due to the ongoing deliberate indifference of their supervisors and policymakers, Defendants Pawlowski and MacLean, and their well-established practices, policies and customs which operated as the moving force behind what the

26

officers thought would be an overlooked and tolerated effort to engage in what had become customary Constitutional deprivations.

100.    The lacking supervisory practices or procedures (or policies), which Defendants Pawlowski and MacLean were required at a minimum to promulgate, implement, monitor and, if necessary, modify, include, inter alia, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating Constitutional violations, especially those that are driven by racial and ethnic animus; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints (lethal, formal and informal) and their respective outcomes – by name, nature of claim, and resolution and corrective action if any; procedures for the efficient, effective, objective investigations of all claims and complaints, their analysis and requiring the prompt and open imposition of disciplinary, corrective action or policy or procedural change; procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures for racial/cultural sensitivity training;

27

procedures for the active pursuit and enlistment of police officers of Hispanic/Latino heritage and with multi-lingual abilities; procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations, including deadly force; procedures for identifying circumstances and the identity of officers who file unsubstantiated criminal charges; procedures for conducting both internal and external reviews of all claims of unconstitutional or otherwise unlawful police conduct; procedures for identifying officers who are in need of remedial training; and procedures for effectively and independently, monitoring officers' drug (including steroid) or alcohol abuse (such as random testing) and for monitoring and testing officer's mental health (including anger management).

101.    The existing customs within the Allentown Police Department created an unreasonable risk of injury in the absence of the above-specified supervisory practices.

102.    Defendants Pawlowski and MacLean were aware the risks existed because they were obvious and because they had occurred previously under their supervision.

103.    Defendants Pawlowski and MacLean were indifferent to the risks, given their failure to remediate past consequences of those risks.

104.    The underlying Constitutional violations inflicted on the Plaintiff resulted from Defendants Pawlowski and MacLean's failure to employ the above supervisory practices.

105.    As a result of the deficient supervision and policymaking of the Defendants, Plaintiff suffered the damages alleged herein.

106.    Defendants Pawlowski and MacLean turned a blind eye to, and were deliberately indifferent to, the large influx of those of Latino/Hispanic heritage that had come to reside in the community of Allentown, and the obvious anti-Latino/Hispanic sentiments that had grown within the Allentown City Police Department and the corresponding pattern of Constitutional abuses it generated.

107.    At the time of the 2000 Census, Allentown's population was 106,670. From 2000 until 2010, Allentown's population increased by over ten percent, and, as of 2010, had an estimated 118,032 residents.

108.    The increase in Allentown's population can be explained largely by a recent influx of immigrants, most of who are Latino/Hispanic. After the September 11, 2001 terrorist attacks, many Latino/Hispanic families moved from New York and New Jersey to Allentown seeking a better life, employment and affordable housing.

29

109.    From 2000 to 2010, the Latino/Hispanic population of Allentown increased 93.66%, that is, from 26,056 or 24.5% of City residents to 50,461 or 42.75% of City residents.

110.    The institutionalization of a culture of racially discriminatory, Constitutionally abusive police misconduct within the Allentown City Police Department was so obvious as to be apparent to any reasonable supervisor or policymaker, including Defendants Pawlowski and MacLean; and, their indifference to the risks that this custom, practice, or supervisory procedure presented was the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

111.    This was no more true than with the Defendants' deliberate indifference to the need to provide its officers, including most especially, Defendants Howells and Iannetta, with more or better training with regard to the safeguards afforded by the Fourth Amendment, including particularly the prohibitions to using excessive force, and most specifically, lethal force.

112.    Defendants Pawlowski and MacLean were aware that their officers confront situations that may require the use of force, that such situations often involve difficult decisions on the part of officers about how much force to use, and that excessive force liability will frequently result if officers use more force than is reasonably necessary under the circumstances.

113.    Defendants Pawlowski and MacLean were aware that the racial animus within the Department would render Latino/Hispanics a likely target of officer's excessive force.

114.    Defendants Pawlowski and MacLean were aware of the numerous incidents of the excessive use of force that had been committed by members of the Department in the past, including those involving Defendants Howells and Iannetta, and failed to subject such offenders to appropriate evaluation, discipline and remedial training, thereby demonstrating a tolerance of past and/or ongoing police misbehavior, through knowledge and acquiescence in their subordinates' Constitutional violations.

115.    Moreover, the conduct exhibited by Defendants Howells and Iannetta on September 10, 2013 was not that of unexpected, independent, non-policymaking actors, but constituted deliberate and predictable acts of subordinates who operated with a rightly perceived impunity due to the ongoing deliberate indifference of their supervisors and policymakers, Defendants Pawlowski and MacLean, and their well-established practices, policies and customs which operated as the moving force behind what the officers thought would be an overlooked and tolerated effort to engage in what had become customary Constitutional deprivations, especially when directed

toward a targeted member of the unprotected Latino/Hispanic community, of
which the Plaintiff was a part.

116.    The lacking supervisory practices or procedures (or policies), which
Defendants Pawlowski and MacLean  were required at a minimum to
promulgate, implement, monitor and, if necessary, modify, include, inter alia,
the following: a heightened supervisory sensitivity and vigilance for
uncovering and eradicating Constitutional violations, especially those that are
driven by racial animus; procedures whereby members of the public who have
experienced Constitutional police violations are encouraged to access a simple,
convenient, non-retaliatory, and responsive procedure to register their
complaints and receive prompt, objective responses; procedures carefully
cataloging complaints (lethal, formal and informal) and their respective
outcomes – by name, nature of claim, and resolution and corrective action if
any; procedures for the efficient, effective, objective investigations of all
claims and complaints, their analysis and requiring the prompt and open
imposition of disciplinary, corrective action or policy or procedural change;
procedures for promptly responding to those who registered complaints and
for securing feedback concerning the resolution reached (necessary to restore
good community relations and to encourage the belief that their complaints
will not be ignored); procedures for racial/cultural sensitivity training;

32

procedures for the active pursuit and enlistment of police officers of Hispanic/Latino heritage and with multi-lingual abilities; procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations, including deadly force; etc.

117.    The existing customs within the Allentown City Police Department created an unreasonable risk of injury in the absence of the above-specified supervisory practices.

118.    Defendants Pawlowski and MacLean were aware the risks existed because they were obvious and because they had occurred previously under their supervision.

119.    Defendants Pawlowski and MacLean were indifferent to the risks, given their failure to remediate past consequences of those risks.

120.    The underlying Constitutional violations inflicted on the Plaintiff resulted from Defendants Pawlowski and MacLean's failure to employ the above supervisory practices.

121.    As a result of the deficient supervision and policymaking of the Defendants, Plaintiff suffered the damages alleged herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00)

limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

**COUNT V**
**42 U.S.C. §1983**
**Failure to Intervene**
**Non-Supervisory**
***Against Individual Defendants***

122.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

123.   Defendants are liable for failing to intervene to prevent the Constitutional violations of Plaintiff's federally protected rights, as claimed herein, by the other Defendants, or by other offenders presently unknown to Plaintiff.

124.   Plaintiff's Constitutional rights were violated as alleged herein.

125.   Under circumstances where a named Defendant was not the violator of a given right as alleged, he had the duty to intervene, including the duty to intervene to prevent an unlawful arrest, false imprisonment, and the use of excessive force.

126.   Each of the Defendants had a realistic and reasonable opportunity to intervene in as much as both Defendants were within arms-reach of the Plaintiff when he was assaulted.

127.   Each of the Defendants failed to intervene.

128.   Each non-intervening Defendant is liable for the harm, and hence damages, suffered by the Plaintiff, as stated herein.

129.   Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

130.   Defendants, the City of Allentown, Mayor Pawlowski and Chief MacLean, are liable for the acts of Defendant Officers Howells and Iannetta pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

131.   Further, the conduct exhibited by subordinate municipal officers and employees, Howells and Iannetta, which occurred on September 10, 2013, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and MacLean, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations.

132.    The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

**COUNT VI**
**42 U.S.C. §1983**
**Civil Conspiracy**
***Against Individual Defendants***

133.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

134.    The Defendants participated in a conspiracy to violate the Plaintiff's Constitutional rights.

135.    Direct evidence of conspiracy is rarely available and therefore, the existence of a conspiracy must usually be inferred from the circumstances.

136.    Those circumstances here establishing a conspiracy, are very compelling:

   a) The Defendant Officers arrived within a short time of each other;

   b) Each participated in an unconstitutional seizure of the Plaintiff;

c) Both assaulted the Plaintiff or engaged in a cover up of the assault;

d) Both made racially deduced false assumptions showing a shared racial animus;

e) Both participated in the events which deliberately caused the injuries to the Plaintiff;

f) Both failed to secure and preserve street videos of the altercation in an attempt to preclude subsequent proof of their criminal wrongdoing in a court of law;

g) Both spoke together after their unconstitutional assault upon the Plaintiff to arrive at a common fabrication which would exonerate them from wrongdoing;

h) Both provided a common fabrication to those who questioned them about their acts and the injuries to Plaintiff;

i) Both provided a common fabrication in testimony before the jury about their acts and the injuries to Plaintiff ; and

j) All the acts undertaken by Defendant Officers were committed with obvious deliberateness and an express predisposition to injure Plaintiff, without reason or provocation – none of their acts were inadvertent or accidental and both their spoken words and their actions were coordinated and focused by racial animus which was apparent.

137.    Each one of the foregoing evidences a meeting of the minds and an understanding between the Defendant Officers, which has as its successful object the deprivation of the Constitutionally protected rights of the Plaintiff.

138.    These circumstances, pre-discovery, would, in and of themselves, warrant a reasonable fact finder in concluding that the Defendants, Howells and Iannetta, formed a conspiracy to deprive the Plaintiff of his Constitutionally protected rights because:

a)  They formed a combination by which they, together, committed the criminal acts of trespass, assault, false arrest, false imprisonment, assault and related hate crimes;

b)  This constitutes a "conspiracy"; and

c)  By being state actors who used their conspiracy to deprive the Plaintiff of his Constitutionally protected civil rights as described, each is liable for the harms inflicted upon the Plaintiff as a result of their concerted actions.

139.    This conspiracy, as it applied to the Plaintiff herein, was an express or implied agreement between the Defendants and others to deprive the Plaintiff of his Constitutional rights, inter alia, to assemble; to be free from excessive use of force; to be at his liberty without unlawful confinement based upon

false assumptions; to freely associate; to pursue life, liberty and happiness; to receive due process unimpeded by false allegations and false swearing.

140.    The Defendants were voluntary participants in the common venture, understood   the general objectives of the plan, knew it involved the likelihood of the deprivation of Constitutional rights, accepted those general objectives, and then agreed, either explicitly or implicitly, to do their part to further those objectives.

141.    The Defendants then did each, either act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of Plaintiff's Constitutional rights as alleged.

142.    An actual deprivation of those rights did occur to the Plaintiff resulting from the said agreement or common design, and as a foreseeable consequence thereof.

143.    The Defendants, and each of them, are jointly and severally responsible for the injuries caused by their fellow co-conspirators even if, or when, their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

144.    As a result of the civil conspiracy entered into and acted upon by the Defendants  and other co-conspirators, Plaintiff suffered a deprivation of his Constitutional rights, and suffered damages as stated herein.

145.    Defendant Officers Howells and Iannetta are liable for their personal
involvement in the commission of the acts complained of here.

146.    Defendants, the City of Allentown, Mayor Pawlowski and Chief
MacLean , are liable for the acts of Defendant Officers Howells and Iannetta
pursuant to the claims of Municipal Liability (Monell), and Policymaker and
Supervisory Liability expressly set forth herein, and are incorporated by
reference as if set forth et extenso here.

147.    Further, the conduct exhibited by subordinate municipal officers and
employees, Howells and Iannetta, which occurred on September 10, 2013,
was not unexpected. Neither were they the deeds of independent, non-
supervisory actors. But, rather, they constituted predictable behaviors of
subordinates who operated with perceived impunity due to the deliberate
indifference of their supervisors and policymakers, Pawlowski and MacLean ,
and their joint policies, practices and customs, which operated as the moving
force behind what the Officers believed to be their unaccountable effort to
engage in what had become, all too customary, Constitutional deprivations.

148.    The likelihood is that, but for the alleged acts and omissions committed
by the Defendants, the injuries inflicted upon the Plaintiff would not have
occurred.

40

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

**COUNT VII**
**42 U.S.C. §1983**
**Municipal Liability**
***Against The City Of Allentown***

149.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

150.   Prior to September 10, 2013, the Defendant City of Allentown either failed to develop policies or developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons in Allentown, which caused the aforesaid violations of Plaintiff's Constitutional rights.

151.   The violations of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendant City of Allentown, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and

41

customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a. Legal cause to stop, detain, arrest, and criminally charge a citizen;

b. The use of force by police officers;

c. The proper exercise of police powers, including, but not limited to the making of an arrest, the use of force, and the bringing of criminal charges;

d. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officer;

e. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

f. Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties;

g. The failure of police officers to follow established policies, procedures, directive, and instructions regarding arrests, the use of force, and the institution of criminal charges under such circumstances as presented by this case;

h. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of Constitutional rights of citizens by other Allentown police officers; and

i. The practice among Allentown police officers of instituting false charges against individuals whom the officers have subjected to unlawful force, with the intention of precluding such individuals from instituting civil claims.

152. It was the policy and/or custom of the Defendant City of Allentown to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated and/or justified by the City of Allentown, including, but not limited to, complaints of citizens, especially minority citizens.

153. The City and its policy-makers have a long-standing practice of defending police officers' civil rights abuses, even when it is apparent that the officers were in the wrong and, even when it would be apparent to a reasonable person that the officers' statements concerning their own conduct were not truthful; and, even when it would be equally apparent that the officers have engaged in a cover-up by engaging in such things as false report writing and providing false testimony under oath.

154. This practice continues in this case where a unanimous jury has concluded that the Plaintiff did not create a substantial risk of any bodily injury to the Defendants nor did he employ any means justifying or requiring the substantial force against him by Defendant Howells; and, where a unanimous jury concluded that the Plaintiff did not resist his arrest at any time; and where the Defendants sworn version of the events were found by the same unanimous jury not to be credible.

155. It was also the policy and/or custom of the Defendant City of Allentown to inadequately screen during the hiring process and to inadequately train and supervise its police officers, including Defendant police officers, thereby failing to adequately discourage further Constitutional violations on the part of its police force in general and Defendant Officers in particular.

156. The Defendant City of Allentown did not require or demand appropriate in-service training or re-training of officers who were known to have engaged in police misconduct or who were known to encourage or tolerate same.

157. The Defendant City of Allentown also did not adopt needed policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein, including those set forth under Supervisory Liability and Policymaking Liability herein before.

158. It was the policy and/or custom of the Defendant City of Allentown to allow and even promote the excessive use of force of their officers and other Constitutional violations described herein.

159. As a result of the above described policies and customs and failure to adopt necessary and appropriate policies, police officers of the Defendant City of Allentown, including the Defendants, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated and even encouraged.

160. The above described policies and customs, and the failure to adopt necessary and appropriate policies, demonstrated a deliberate indifference on the part of the policymakers of the Defendant City of Allentown, which group of policymakers includes but is not limited to, Defendant Chief of Police MacLean and Mayor Pawlowski, and were the moving force behind and the cause of the violation of the Plaintiff's rights as alleged herein, and the claimed damages which resulted therefrom.

161. But for this deliberate indifference, the injuries, which were suffered by the Plaintiff, would, in all likelihood, not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00)

limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT VIII
### State Constitutional Violations
### *Against Individual Defendants*

162.     The conduct of the Defendants, as alleged herein, was violative of the Plaintiff's rights under Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania to be free from unreasonable seizures, not predicated upon probable cause, and from the use of excessive force.

163.     As a result of the Defendants' conduct, which was violative of the guarantees afforded Plaintiff under the Pennsylvania Constitution, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Easter District of Pennsylvania and provide the injunctive relief requested hereinafter

## COUNT IX
### Assault and Battery-State Violations
### *Against Defendants Howells and Iannetta*

164.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

46

165. Defendants assaulted and battered Plaintiff as stated hereinbefore.

166. As a result of Defendants' assault and battery, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT X
### Civil Conspiracy
### *Against Defendants Howells, Iannetta, City and Does*

167. The preceding paragraphs are incorporated herein by reference as though fully set forth.

168. The Defendants conspired to engage in the tortious State claims alleged hereinbefore in Counts III and IX, whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms upon the Plaintiff by their own acts or omissions or by those of fellow co-conspirators.

169. As a result of the aforesaid conspiracy engaged in by Defendants, Plaintiff suffered the damages stated herein.

47

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

**COUNT XI**
**42 U.S.C. §1983**
**Fourteenth Amendment – Equal Protection**
**Racially Motivated Misconduct**
***Against All Defendants***

170.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

171.    The Plaintiff was a member of a racial minority, as he was of Hispanic descent.

172.    As described above, the Plaintiff was treated differently than similarly situated white persons.

173.    The Allentown City Police Department and the City of Allentown have a long history of negative treatment towards people of Hispanic descent, and minorities in general.

174.    The Plaintiff was subject of intentional discrimination as described herein.

175.    Defendant Howells has a history of making negative racial remarks directed towards individuals who are of Hispanic descent during the performance of his official duties.

176.    The Allentown City Police Department and the City of Allentown have developed a culture of negative treatment towards people of Hispanic descent and minorities in general, and the individual Defendants actions and/or inactions furthered this culture.

177.    Not only was intentional discrimination tolerated, but also supervisors and policy makers of the Department and City encouraged it.

178.    The Plaintiff was intentionally discriminated against by the Defendants due to his Hispanic roots, in violation of the 4th and 14th Amendments to the United States Constitution.

179.    As a direct and proximate result, Plaintiff was injured and suffered damages as stated herein.

180.    Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

181.    Defendants, the City of Allentown, Mayor Pawlowski and Chief MacLean, are liable for the acts of Defendant Officers Howells and Iannetta pursuant to the claims of Municipal Liability (Monell), and Policymaker and

Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

182.     Further, the conduct exhibited by subordinate municipal officers and employees, Howells and Iannetta, which occurred on September 10, 2013, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and MacLean, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations directed at a targeted member of the unprotected Latino/Hispanic community.

183.     The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT XII
## 42 U.S.C. §1981
## Denial Of Equal Rights Under The Law
### *Against All Defendants*

184.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

185.    In the actions described above the Defendants deprived the Plaintiff of rights protected by the Constitution of the United States of America, and the Defendants intended to deny the Plaintiff rights enjoyed by white citizens of the United States.

186.    The supervisors and Defendant City were aware of the denial of equal rights under the law or were willfully blind, and have developed a practice, policy and custom of depriving non-whites equal rights under the law and either ignored or encouraged the Constitutional violations described above.

187.    The Plaintiff suffered harm due to the Defendants' violations of his Constitutional rights with the intent to deprive him of rights enjoyed by white citizens.

188.    42 U.S.C. § 1981 confers on all persons the right to "the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." 42 U.S.C. § 1981(a).

51

189.    Section 1981 provides extensive equal protection rights, but is properly
        brought pursuant to Section 1983, which provides the remedy for violations
        of Section 1981 by state actors such as Defendants Howells and Iannetta .

190.    Due to its legislative history and emphasis on equal treatment under the
        law, Section 1981 is confined to provide a remedy where as here,
        discrimination based upon race or alienage is presented as an element of the
        claim.

191.    White police Defendants Howells and Iannetta, acting under color of
        state law, and with racial animus seriously assaulted Plaintiff.

192.    The Plaintiff was a member of a protected class and the Defendant
        Officers, acting as agents of the government, under color of state law, treated
        similarly situated individuals outside of the protected class differently,
        thereby evidencing purposeful discrimination against the Plaintiff.

193.    The City of Allentown is liable for the actions of Howells and Iannetta
        on the basis of the Monell assertions made hereinbefore and the fact that the
        Municipalities deliberate conduct was the moving force.

194.    Likewise, Defendants Pawlowski and MacLean are liable for the
        actions of Defendants Howells and Iannetta based upon the assertions of their
        supervisory and policymaking liability made hereinbefore, and the fact that
        this Constitutional injury was caused by their deliberately indifferent acts and

52

omissions, which may fairly be said to represent official municipal custom or policy.

195.    Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

196.    Defendants, the City of Allentown, Mayor Pawlowski and Chief MacLean, are liable for the acts of Defendant Officers Howells and Iannetta pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

197.    Further, the conduct exhibited by subordinate municipal officers and employees, Howells and Iannetta, which occurred on September 10, 2013, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and MacLean, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations directed at a targeted member of the unprotected Latino/Hispanic community.

198.   The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

199.   As a direct and proximate result, the Plaintiff was injured and suffered damages as stated herein and further seeks damages under 42 U.S.C. § 1981.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

### COUNT XIII
### 42 U.S.C. §1985
### Conspiracy To Interfere With Civil Rights
### *Against All Defendants*

200.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

201.   As described above, the Defendants conspired to deny the Plaintiff rights afforded non-Hispanic, white citizens, by assaulting him, and then conspiring to conceal what actually occurred.

202.   This conspiracy was engaged in with the intent to deprive the Plaintiff of his Constitutional rights and equal protection of the law.

203.    The Plaintiff suffered harm due to the Defendants' conspiracy to violate his Constitutional rights with the intent to deprive him of equal protection of the law.

204.    As a direct and proximate result the Plaintiff was injured and suffered damages as stated herein and further seeks damages under 42 U.S.C. § 1985.

205.    Specifically, the agreement to deprive the Plaintiff of his rights was motivated by racially discriminatory animus on the parts of Defendants Howells and Iannetta, and reflected the custom and culture established within the Allentown Police Department for its officers to engage in Constitutional deprivations directed at a targeted member of the Latino/Hispanic community, such as Plaintiff.

206.    Motives, much less motives that have racially discriminatory animus as their source, are not frequently broadcast at the moment they are acted upon – "racial animus is often difficult to prove because it relies on hidden and unconscious biases" – it is for this reason that such animus is generally identified by circumstantial evidence that the discriminatory offenders acted in accordance with such animus before or after the discriminatory behavior at issue, not only at the very moment of the challenged conduct.

207.    Based upon information and belief, Plaintiff believes and therefore avers that a reasonable fact-finder, considering all the material facts, would

reasonably conclude that the Defendants' selected the course of action which they followed here because of Plaintiff's race, and that such a conclusion would logically result from consideration of, inter alia, the following factors:

a) The racial composition of the parties, with the Plaintiff being Hispanic/Latino and the Defendant officers Howells and Iannetta being caucasian;

b) Defendant Howells has had assaultive and verbal exchanges with Latino/Hispanic citizens in Allentown wherein he expressed animus towards individuals because of their race;

c) The Defendants, based upon information and belief, have engaged in prior acts of physical abuse against those of Plaintiff's heritage in disproportionate numbers when compared to those of non Latino/Hispanic heritage;

d) Defendants Howells and Iannetta have a history of referring to persons of Latino/Hispanic heritage in racially derogatory and discriminatory terms in casual conversation with others; and

e) The Defendants' conduct cannot be viewed in isolation, but must be considered as part of a sworn force whose racially discriminatory history against Latinos/Hispanics is well-documented and supported by

statistically significant evidence, which mirrors the racial animus of the Defendants.

208.    The above factors, individually, would permit a reasonable jury to believe that the unlawful and unconstitutional acts committed by Defendants Howells and Iannetta were motivated by racially discriminatory animus, which was carried on as part of a preconceived scheme or common understanding to deprive the Plaintiff, directly or indirectly, of the equal protection of the law. However, when combined, these factors lead to the conclusion that such was the case.

209.    Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

210.    Defendants, the City of Allentown, Mayor Pawlowski and Chief MacLean, are liable for the acts of Defendant Officers Howells and Iannetta pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

211.    Further, the conduct exhibited by subordinate municipal officers and employees, Howells and Iannetta, which occurred on September 10, 2013, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of

subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and MacLean, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations directed at a targeted member of the unprotected Latino/Hispanic community.

212.    The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT XIV
## 42 U.S.C. §1985 - §1986
## Failure To Prevent Actions Taken Under § 1985 - § 1986
### *Against All Defendants*

213.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

214.    Defendants Howells and Iannetta acted as part of a conspiracy to interfere with Plaintiff's Civil Rights, violating 42 U.S.C. § 1985(3), which

58

imposes civil liability on individuals who conspire to deprive "any person . . . of the equal protection of the laws, or equal privileges and immunities under the laws."

215.     In this regard, the Defendant Officers entered into a conspiracy, the elements of which are detailed hereinbefore in Count VI.

216.     The Defendant Officers were motivated by a racially based discriminatory animus as evidenced by their own words spoken contemporaneously with the deprivation of Plaintiff's, a Hispanic/Latino, Constitutional rights, including his deprivation of the equal protection of the laws.

217.     The Defendant Officers acted in furtherance of the conspiracy by unlawfully assaulting Plaintiff without justification, provocation or reason, in violation of his Constitutional rights under the Fourth Amendment to the United States Constitution.

218.     The Plaintiff has suffered harm as described herein from the Defendants' failure to prevent the conspiracy to violate his Constitutional rights, for which Plaintiff seeks damages under 42 U.S.C. § 1986.

219.     Defendant Officers Howells and Iannetta are liable for their personal involvement in the commission of the acts complained of here.

220.     Defendants, the City of Allentown, Mayor Pawlowski and Chief
MacLean, are liable for the acts of Defendant Officers Howells and Iannetta
pursuant to the claims of Municipal Liability (Monell), and Policymaker and
Supervisory Liability expressly set forth herein, and are incorporated by
reference as if set forth et extenso here.

221.     Further, the conduct exhibited by subordinate municipal officers and
employees, Howells and Iannetta, which occurred on September 10, 2013,
was not unexpected. Neither were they the deeds of independent, non-
supervisory actors. But, rather, they constituted predictable behaviors of
subordinates who operated with perceived impunity due to the deliberate
indifference of their supervisors and policymakers, Pawlowski and MacLean,
and their joint policies, practices and customs, which operated as the moving
force behind what the Officers believed to be their unaccountable effort to
engage in what had become, all to customary, Constitutional deprivations
directed at a targeted member of the unprotected Latino/Hispanic community.

222.     The likelihood is that, but for the alleged acts and omissions committed
by the other Defendants, the injuries inflicted upon the Plaintiff would not
have occurred.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court
award judgment in Plaintiff's favor and against all Defendants, jointly and severally,

in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## OTHER

223.   Plaintiff respectfully requests a jury of twelve (12) jurors to deliberate upon the within causes of action.

224.   The within case is not subject to arbitration.

225.   Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

226.   Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices to be unlawful, and enjoining their present and continued effects.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a) Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

61

b) Award punitive damages to Plaintiff against the individual Defendants in their individual capacities, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

c) Award reasonable attorney's fees and costs to the Plaintiff, or as may be awardable;

d) Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1981,1983, 1985, 1986, 1988 and Article I Section 8 of the Pennsylvania Constitution; and further affirmatively requiring the Defendant City of Allentown to engage in appropriate remedial efforts to adopt, and enforce, policies for the Allentown City Police Department that are calculated and intended to preclude the conduct alleged to have been engaged in by the Defendants named herein; and

e) Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,

Dated: 4/1/15

Robert E. Goldman, Esquire
PA Attorney I.D. # 25340
527 Hamilton Street
Allentown, PA 18101
(267) 261-5282
reg@bobgoldmanlaw.com
Attorney for Plaintiff